[No. 27903. Department Two. February 2, 1940.]

THE STATE OF WASHINGTON, *on the Relation of Pay Less Drug Stores et al., Plaintiff,* v. H. G. SUTTON, *as Judge of the Superior Court for Kitsap County, Respondent.*[1]

[1]Reported in 98 P. (2d) 680.

S. A. *Gagliardi* and A. M. *Ursich,* for relators.

*Ralph E. Purves,* for respondent.

BEALS, J.—Pay Less Drug Stores is a corporation, owning and operating several stores in the state of Washington for the sale of merchandise at retail, one of its stores being located in the city of Bremerton. T. A. Zimmerman is general manager for the corporation in the state of Washington, and J. L. Snow is manager of its Bremerton store. Among other things, the stores sell cigarettes, cigars, and tobacco in other forms, together with many other articles of merchandise.

On or about December 18, 1939, the prosecuting attorney for Kitsap county filed in the office of the clerk of the superior court for that county a complaint entitled: "State of Washington, Plaintiff, v. Pay Less Drug Stores, T. A. Zimmerman, J. L. Snow, Defendants." After formal allegations, the complaint alleged that, since June 7, 1939, when chapter 221 of the Session Laws of 1939, p. 923 (Rem. Rev. Stat. (Sup.), § 5854-21 [P. C. § 7109-21] *et seq.*), known as "unfair practices act," became effective, the defendants had, in their store, sold various brands of cigarettes and tobaccos at less than the cost thereof, as defined by the act, and had been using these articles as "loss leaders" in the promotion of sales of other merchandise, all in violation of the statute above referred to. It was also

alleged that the business practice of defendants in the particular mentioned was unfair, and was for the purpose of destroying competition and obtaining an unfair advantage over the other merchants engaged in the same business.

It was further alleged that the tobacco and cigarette trade in and around Bremerton had established a cost survey in connection with the retail sale of cigarettes and tobacco, and that, in accordance with this survey, certain brands of cigarettes and tobacco could not be sold at prices less than prices set forth in the complaint without selling the tobacco at less than cost. There was no allegation as to when this "cost survey" was made. The complaint concluded with allegations that the defendants therein named had violated the statute to the damage of the public generally; that no adequate remedy at law existed; and that the defendants would continue their alleged unlawful practices unless restrained by order of the court.

The complaint demanded the issuance of a temporary restraining order; that, after a hearing, a temporary injunction be issued; and that, on the trial, such temporary injunction be made permanent; the temporary injunction asked for to restrain defendants from selling cigarettes and tobacco at the prices at which defendants were selling the same, or at any other price below the alleged cost price, and to restrain defendants from advertising the articles mentioned at the prices at which they had been selling the same.

Immediately upon filing the complaint, the court signed an order entitled "order to show cause and temporary restraining order," restraining and enjoining the defendants, until the further order of the court, from advertising, offering for sale, or selling the brands of cigarettes and tobacco named in the order at less than prices fixed in the order, which were higher than

the prices at which the complaint alleged defendants were selling such merchandise, the order being returnable January 8, 1940.

By its terms, the order was not limited to the store operated by defendants in the city of Bremerton, but contained no territorial limits whatsoever.

December 20th, the defendants moved to dissolve the temporary restraining order, at the same time serving a notice calling the motion for hearing for the following day. In the argument before this court, it was stated that, at the time and place referred to in the notice, the prosecuting attorney objected to consideration of the motion upon the ground that he had not been given three days notice thereof, as required by the rules of court. The record shows, however, that the court heard the argument of counsel and denied defendants' motion to dissolve the order.

The defendants in the action then filed in this court an original proceeding by way of a petition for a writ of certiorari, naming the trial judge as respondent and seeking to review the order above referred to. This court issued an order to show cause why the writ should not issue, the order restraining the respondent judge from proceeding further in the matter until the hearing before this court. In response to the order to show cause, a return was made by the respondent judge, and, after argument, the matter was submitted to this court on the merits.

The title of chapter 221, Session Laws of 1939, p. 923, above referred to, reads as follows:

"AN ACT relating to unfair competition, discrimination and practices in connection with the sale of certain articles and commodities and the rendering of certain services; defining, prohibiting and making the same unlawful; providing for civil and criminal actions in connection therewith; and prescribing penalties."

Pursuant to § 13 of the act, p. 930 (Rem. Rev. Stat. (Sup.), § 5854-33 [P. C. § 7109-33]), the attorney general and the prosecuting attorneys, in their respective counties, are vested with power to institute and maintain actions, in the name of the state of Washington, to restrain and enjoin any person from performing, or continuing the performance of, any act or conduct prohibited by the section. By § 10 of the act, p. 929 (Rem. Rev. Stat. (Sup.), § 5854-30 [P. C. § 7109-30]), the violation of the provisions thereof is made a misdemeanor, punishable by fine or by imprisonment in the county jail, or both.

Rem. Rev. Stat., § 722 [P. C. § 8056], reads as follows:

"No injunction shall be granted until it shall appear to the court or judge granting it that some one or more of the opposite party concerned has had reasonable notice of the time and place of making application, except that in cases of emergency, to be shown in the complaint, the court may grant a restraining order until notice can be given and hearing had thereon."

Respondent argues that, under the unfair practices act, the superior court may issue temporary restraining orders without notice, and that such orders may be based merely upon a complaint filed in the name of the state by the proper officer and an affidavit alleging the existence of an emergency under the act, the order itself containing a finding that such an emergency exists. Respondent also contends that, as § 10 of the act above referred to provides for the punishment of the violation of the act by fine or imprisonment, the act is criminal in its nature, and that alleged criminal acts on the part of one occupying the position of defendants in the action (relators herein) may be restrained without notice. It is, of course, true that, under the act, a prosecuting attorney can charge a person with a criminal offense by filing a complaint or infor-

mation alleging facts constituting a violation of the terms of the statute.

It must be remembered that, in the complaint in this action, it is alleged that the defendants in the action had maintained the prices complained of ever since June 7, 1939. There is no question here of a sudden change, or threatened change, in the prices asked by the defendants in the action for the articles referred to in the complaint.

■ In Black's Law Dictionary (3d ed.), restraining order is defined as follows:

"An order which may issue upon the filing of an application for an injunction forbidding the defendant to do the threatened act until a hearing on the application can be had. Though the term is sometimes used as a synonym of 'injunction,' a restraining order is properly distinguishable from an injunction, in that the former is intended only as a restraint upon the defendant until the propriety of granting an injunction, temporary or perpetual, can be determined, and it does no more than restrain the proceedings until such determination."

In Lewis & Spelling, The Law of Injunctions, 30, § 18, is found the following:

"A restraining order is generally granted without notice to the opposite party, and is intended only as a restraint on him until the propriety of granting a temporary injunction can be determined, and it goes no further than to preserve the status until that determination." ·

In 1 High on Injunctions (4th ed.), 9, § 5a, the rule is laid down as follows:

"Since the object of a preliminary injunction is to preserve the *status quo*, the court will not grant such an order where its effect would be to change the *status*. Thus, where the plaintiff seeks to enjoin the defendant from interfering with acts about to be done by the plaintiff against the objection of the defendant, a pre-

liminary injunction restraining such interference is erroneous since its effect is to destroy the existing condition of the subject-matter of the suit by permitting the doing of affirmative acts by the plaintiff in advance of the final determination of his right to do them. . . . And by the *status quo* which will be preserved by preliminary injunction is meant the last actual, peaceable, noncontested condition which preceded the pending controversy, and equity will not permit a wrong-doer to shelter himself behind a suddenly and secretly changed *status*, although he succeeded in making the change before the hand of the chancellor has actually reached him."

In 14 R. C. L. 306, is found the following:

"Another form in which injunctive relief is sometimes granted is by a restraining order, distinguished from other forms by the fact that it is a temporary or interlocutory order, issued on an ex parte order of the judge for the purpose of preventing the doing of some act during the time that an application for a preliminary injunction is pending. Such an order may be issued, in a proper case, by the federal courts for the purpose of thus preserving the status quo."

In the early case of *State ex rel. Miller v. Lichtenberg,* 4 Wash. 407, 30 Pac. 716, this court said:

"The only purpose of such restraining order is to keep things *in statu quo* until the matter can be brought regularly before the court."

The supreme court of the United States, in the case of *Houghton v. Meyer,* 208 U. S. 149, 52 L. Ed. 432, 28 S. Ct. 234, construing § 718, Rev. Stat. (28 U. S. C. A., § 381), granting a circuit or district court power to grant restraining orders in cases where danger of irreparable injury from delay appeared, said:

"Thus by its very terms the section (718) does not deal with temporary injunctions, concerning which power is given in other sections of the statutes, but is intended to give power to preserve the *status quo* when there is danger of irreparable injury from delay

in giving the notice required by Equity Rule 55, governing the issue of injunctions."

The supreme court of Oklahoma, in the case of *Callaway v. Sparks,* 184 Okla. 569, 89 P. (2d) 275, said:

"A restraining order is an order granted to maintain the subject of the controversy in status quo until a hearing may be had on the application for a temporary injunction and it automatically expires on the date on which the court cites the parties to appear for hearing on the temporary injunction, if it is not further continued."

The cases of *Ex parte Grimes,* 20 Okla. 446, 94 Pac. 668; *Hartzog v. Seeger Coal Co.,* 163 S. W. (Tex. Civ. App.) 1055; *Labbitt v. Bunston,* 80 Mont. 293, 260 Pac. 727; and *Beech v. United States Fidelity & Guaranty Co.,* 54 Idaho 255, 30 P. (2d) 1079, 92 A. L. R. 264, are to the same effect.

Courts issue temporary restraining orders without notice only in cases in which a satisfactory showing is made which convinces the court that the signing of such an order is required in the interests of justice and equity. Powers of a court of equity are broad, and while no absolute rule may be laid down, instances in which a restraining order would be issued without notice, the effect of which will be other than to preserve the *status quo,* are rare.

In the complaint filed, it was simply alleged:

"That the tobacco and cigarette trade in the locality and vicinity of Bremerton, Kitsap county, Washington, and its trade area, has made and now has an established cost survey in connection with the sale at retail of cigarettes and tobacco in said city of Bremerton and its trade area."

The complaint does not allege that the defendants had been requested by anyone to conform to the al-

leged cost survey, or even that defendants had knowledge thereof. The affidavit filed by the prosecuting attorney in support of his application for the order, which he refers to as a temporary restraining order, simply "reaffirms and incorporates herein by reference all of the statements, matters, things and allegations contained in his complaint on file herein."

Referring to Rem. Rev. Stat., § 722, *supra,* this court, in the case of *Hemen v. Rinehart,* 45 Wash. 1, 87 Pac. 953, said:

"Evidently the legislature intended that such emergency restraining order should be granted to preserve the existing status for such a reasonable time as might be required to give notice to the party restrained and secure him a hearing."

In *Rogers v. Kendall,* 173 Wash. 390, 23 P. (2d) 862, this court used the following language:

"The terms 'temporary restraining order' and 'temporary injunction,' while sometimes used synonymously, are not so, as they do not mean the same thing. A temporary restraining order is ordinarily issued without notice, and remains in effect until the issues presented by that order are disposed of, when it ceases to have any effect without an order of the court discharging it. A temporary injunction is an order which is effective until the trial of the action on the merits in which it was issued. When the issues presented by the temporary restraining order are disposed of, if by agreement of the parties or the order of the court such temporary restraining order is continued in effect until a hearing on the merits, it becomes a temporary injunction."

From the decisions of this court, it clearly appears that the purpose of a temporary restraining order is to preserve the *status quo* until the court can hear an application for a temporary injunction.

In 32 C. J. 21, § 2, the rule is laid down that

"The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, noncontested status which preceded the pending controversy. Ordinarily, where the issuance of a preliminary injunction would have the effect of granting all the relief that could be obtained by a final decree and would practically dispose of the whole case, it will not be granted."

The following authorities also support this proposition: *Morgan v. Smart,* 88 S. W. (2d) (Tex. Civ. App.) 769; *Humble Oil & Refining Co. v. Neeks Drilling Co.,* 119 S. W. (2d) (Tex. Civ. App.) 169.

In the case at bar, it nowhere appears when the so-called "cost survey" referred to in the complaint was established. It is a fair deduction from the allegation of the complaint above quoted, to the effect that the local trade "has made and now has an established cost survey," that the same was established not long prior to the institution of the action, but in any event, it should not be assumed in aid of the complaint that the cost survey had been established for any considerable length of time.

Prior to the enactment of the law upon which this action was based, there was no statutory authority whatever for the establishment of cost surveys. It does not appear from the record that relators made any change in their prices subsequent to the establishment of the cost survey, or at any time. So far as they were concerned, the *status quo* had been consistently maintained by them.

The statute does not specifically provide that the merchants of any particular class may set prices to which all other merchants must conform. Section 6 of the act, p. 927 (Rem. Rev. Stat. (Sup.), § 5854-26 [P. C. § 7109-26]), simply provides that, if a particular

trade has established a cost survey for the locality, the survey constitutes competent evidence which may be used in an attempt to prove commodity costs of an alleged violator of the act. Section 15, p. 930, which declares the purpose of the act, provides in part as follows:

" . . . the purpose of this act is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented." Rem. Rev. Stat. (Sup.), § 5854-35 [P. C. § 7109-35].

Manifestly, the declared purpose of the act might not be served by the establishment of prices at which all dealers must sell certain commodities.

Section 4, p. 926, making certain acts misdemeanors subject to punishment, reads as follows:

"It shall be unlawful for any person engaged in business within this state to sell any article or product at less than the cost thereof to such vendor, or give away any article or product, for the purpose of injuring competitors or destroying competition, or to use any article or product as a 'loss leader,' or in connection with any sale to make or give, or to offer to make or give, any special or secret rebate, payment, allowance, refund, commission or unearned discount, whether in the form of money or otherwise, or to secretly extend to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, or to make or enter into any collateral contract or device of any nature, whereby a sale below cost is effected, to the injury of a competitor, and where the same destroys or tends to destroy competition." Rem. Rev. Stat. (Sup.), § 5854-24 [P. C. § 7109-24].

The terms "cost" and "cost of doing business" are defined in § 1 of the act, p. 923, as follows:

" 'Cost' has its usual meaning and in addition as applied to production includes the cost of raw materials,

labor and all overhead expenses of the producer, and as applied to distribution means the invoice cost or replacement cost, whichever is lower, of the article or product to the distributor and vendor plus the cost of doing business by said distributor and vendor;

" 'Cost of doing business' or 'overhead expense' means all costs of doing business incurred in the conduct of such business and must include without limitation the following items of expense: Labor (including salaries of executives and officers), rent, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising." Rem. Rev. Stat. (Sup.), § 5854-21 [P. C. § 7109-21].

It would seem that a merchant who sells at lower prices than his competitors may not necessarily be selling at less than cost, that matter depending, as to him, upon a number of factors.

■ On behalf of respondent, it is submitted that the complaint charges relators with criminal acts, and that, for this reason, relators were not entitled to notice prior to the granting of the restraining order, and that it would be a useless act for the court to require notice of an application for a temporary restraining order when the prosecuting attorney could have caused an immediate arrest on criminal charges. The answer to this argument is that, if one is arrested as a law violator, he is entitled to a trial according to the forms of law and, by the mere fact of arrest alone, is not prevented from continuing his activities, save in so far as the same may be interfered with by his confinement prior to such time as he may be released on bail.

■ Ordinarily, equity will not enjoin the commission of a crime. 5 Pomeroy's Equity Jurisprudence (2d ed.), 4291, § 1890; 1 High on Injunctions (4th ed.), 29, § 20. This general rule is subject to the exception that, when acts declared criminal by statute also constitute an invasion of property rights, an injunction

may be had. 1 High on Injunctions (4th ed.), 33, § 20a; 32 C. J. 277, § 440. Of course, the statute on which this action is based provides for the issuance of injunctions (§ 9, p. 928, Rem. Rev. Stat. (Sup.), § 5854-29 [P. C. § 7109-29]), but the injunctions contemplated by the act are those issued after a hearing.

The temporary restraining order now before us for review did not tend to preserve any *status quo;* rather, it changed the status. Upon the record, it must be held that the trial court erred in making the order. The record before the trial court, as certified to us, did not warrant any such drastic action. No bond in relators' favor could be required in such an action, and it would seem that relators would be without redress if later the order should be set aside. We are not here concerned with the power of the superior court to enter a temporary injunction, after notice and a hearing.

In this opinion, we have not considered the question of whether chapter 221, Laws of 1939, the statute here in question, is or is not a valid statute. Upon that question, we express no opinion, leaving that matter open for future consideration.

The order now before us for review is reversed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.