[No. 36057-8-II.   Division Two.   October 2, 2007.]

NORTHWEST GAS ASSOCIATION ET AL., *Appellants*, v. THE
WASHINGTON UTILITIES AND TRANSPORTATION
COMMISSION, *Respondent*.

*Donald J. Courser, Vanessa S. Power,* and *Timothy L. McMahan* (of *Stoel Rives, LLP*); *Michael A. Nesteroff* (of *Lane Powell, PC*); *Arthur W. Harrigan, Jr.,* and *Christopher T. Wion* (of *Danielson Harrigan Leyh & Tollefson, LLP*); *Jennifer T. Barnett* and *Stephen J. Tan* (of *Cascadia Law Group*); *Jason T. Kuzma* and *Sheree S. Carson* (of *Perkins Coie, LLP*); and *William J. Lehman* (of *Cable Huston Benedict Haagensen & Lloyd, LLP*), for appellants.

*Robert M. McKenna, Attorney General,* and *Robert D. Cedarbaum, Senior Counsel,* for respondent.

*Shelley M. Hall* (of *Stokes Lawrence*), for respondent intervenors Bellingham Herald and Allied Daily Newspapers.

*Harold Malkin* and *Jordan Gross* on behalf of The American Petroleum Institute, amicus curiae.

*Signe H. Brunstad* on behalf of Washington Coalition for Open Government, amicus curiae.

¶1 HUNT, J. — Plaintiffs Northwest Gas Association; Olympic Pipe Line Company; Chevron Pipe Line Company; Northwest Terminaling Company; BP West Coast Products, LLC; McChord Pipeline Company; Intalco Aluminum Corporation; Yellowstone Pipe Line Company; ConocoPhillips Pipe Line Company; Terasen Pipelines (Puget Sound) Corporation; Valero, LP; Portland General Electric; B-R Pipe-

line Company; and KB Pipeline Company (collectively, the Pipelines) appeal the Thurston County Superior Court's (1) denial of their request for a preliminary injunction and (2) order, based on the public records act, chapter 42.56 RCW, that the Washington Utilities and Transportation Commission (WUTC) disclose to intervenor newspapers and a private individual highly detailed gas pipeline structural and location information and underlying data ("shapefile" data) that the law required the Pipelines to file with the WUTC.

¶2 Asserting that this shapefile data is exempt under Washington's Public Records Act, the Pipelines argue that (1) they met their burden of proof for a preliminary injunction, including showing a likelihood of success at a permanent injunction trial on the merits; (2) equitable interests favor granting a preliminary injunction; (3) the WUTC's release of this highly detailed shapefile data will make their pipeline facilities vulnerable to sabotage and, thus, will pose a significant threat to public safety and security; (4) the trial court applied the wrong standard to the preliminary injunction hearing, essentially consolidating it with a permanent injunction hearing without prior notice to the parties in violation of CR 65; and (5) the trial court thus erred in ruling prematurely that the Pipelines had failed to show that the requested shapefile data met public records act exemption requirements without first according the Pipelines their "day in court" to prove their case.

¶3 Holding that the trial court erred as a matter of law in denying the Pipelines' request for a preliminary injunction and in ordering the WUTC to disclose the shapefile data before holding a trial on the merits, we reverse and remand for a trial on the merits of the Pipelines' request for a permanent injunction.

# FACTS

## I. BACKGROUND

### A. Pipeline Safety Acts

### 1. Federal

¶4 In 1979, the United States Congress enacted the Hazardous Liquid Pipeline Safety Act of 1979, Pub. L. No. 96-129, title II, 93 Stat. 989, 1003 (1979), modeled after the Natural Gas Pipeline Safety Act of 1968, Pub. L. No. 90-481, 82 Stat. 720 (1968). In 1992, Congress modified this 1979 act, unified it with the Natural Gas Pipeline Safety Act, and renamed it the federal Pipeline Safety Act of 1992, 49 U.S.C. Chapter 601.

¶5 The purpose of the federal Pipeline Safety Act is "to provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities." 49 U.S.C. § 60102(a)(1). To accomplish this purpose, the federal Pipeline Safety Act establishes minimum safety standards. 49 U.S.C. §§ 60101-60137.

¶6 In addition, the federal Department of Transportation (Federal DOT) National Pipeline Mapping Program includes a National Pipeline Mapping System—a publicly-available web-based tool[1] that (1) identifies the general location of gas and hazardous liquid pipelines throughout the United States; (2) provides gas and other pipeline location data down to street-level, showing nearby streets on a 1:24,000 scale and the applicable zip codes for the pipelines' locations; (3) identifies each pipeline operator by pipeline; and (4) identifies what material each pipeline transports.

¶7 Section 60104(c) of the federal Pipeline Safety Act is a federal preemption clause for *interstate* pipelines. This

---

[1] The National Pipeline Mapping System is available at https://www.npms.phmsa.dot.gov (last visited Aug. 21, 2007).

preemption clause expressly provides that a "State authority may not adopt or continue in force safety standards for *interstate* pipeline facilities or *interstate* pipeline transportation." (Emphasis added.) Nonetheless, the federal Pipeline Safety Act allows states to adopt more stringent safety standards for *intrastate* pipeline facilities and *intrastate* pipeline transportation if they receive certification under 49 U.S.C. § 60105(a) from the federal Office of Pipeline Safety and the Federal DOT. 49 U.S.C. § 60104(c). Under this section, the Federal DOT has certified the WUTC to regulate *intrastate* pipeline operators and facilities in the State of Washington. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 879 (9th Cir. 2006).

¶8 In addition, 49 U.S.C. § 60106(a) authorizes the WUTC to participate in the oversight of *interstate* pipelines and establishes the WUTC as an agent of the Federal DOT. As an authorized Federal DOT agent, the WUTC has delegated authority to ensure Washington pipeline compliance with federal safety standards. 49 U.S.C. § 60117(c).

## 2. State

¶9 In 1999, a natural gas pipeline exploded near Bellingham, killing a fisherman and two children playing in a nearby creek. In response to community outcry, the Washington State Legislature passed the Washington Pipeline Safety Act to "protect the health and safety of the citizens of the state of Washington and the quality of the state's environment." RCW 81.88.005(1). This act generally requires promulgation of guidelines, which parallel the federal pipeline safety guidelines.

¶10 Washington's Pipeline Safety Act requires "hazardous liquid pipeline companies, and gas pipeline companies with *interstate* pipelines, gas transmission pipelines, or gas pipelines operating over two hundred fifty pounds per square inch gauge, to provide accurate maps of their pipeline to specifications developed by the [WUTC]." RCW 81-.88.080(1) (emphasis added). Washington's Pipeline Safety

Act also requires the WUTC to provide this pipeline map information to the "One-Call System"—a state program instructing residents to call a designated telephone number before excavation or digging to determine if their plans will interfere with underground utilities. RCW 19.122.027. Information that the WUTC provides to the One-Call System must be consistent with the Federal DOT National Pipeline Mapping Program. RCW 81.88.080(2).

¶11 To comply with Washington's Pipeline Safety Act and to ensure WUTC information consistency with the National Pipeline Mapping System, the WUTC promulgated agency regulations under chapter 480-75 WAC. WAC 480-75-999(1) incorporates "by reference" Title 49 of the federal pipeline safety Code of Federal Regulations. And WAC 480-75-600(1), for example, requires all affected pipeline companies to provide the WUTC with "maps, drawings, and records . . . of sufficient scale and detail as is necessary to show the size and type of material of all facilities."

### B. Pipelines' Compliance

¶12 To comply with these safety requirements, the Pipelines provided the WUTC with two tiers of information. The first tier of information, termed "high-level data," comprises general pipeline location information, typically on a 1:24,000 scale. The WUTC currently provides these high-level general-location pipeline maps to the public.[2]

¶13 The second tier of information, termed "attribute-level data," is more detailed and specialized than the first tier of information. This second tier attribute-level data includes "exact geographic positioning system coordinates for the pipelines and terminals, locations and types of metering facilities, taps, mileposts, cathodic protection test sites, and valves, plus information about the diameter of

---

[2] WUTC, Pipeline Maps, *available at* http://www.wutc.wa.gov/webimage.nsf/0/a8cf458d248f31f0882572200075afb6 (last visited Aug. 21, 2007).

the pipeline, depth, and commodities transported." Br. of Appellant at 8-9. This attribute-level data is electronically embedded in a WUTC shapefile—a digital representation of the detailed data, which, when opened with a particular computer program, creates a precise drawing of exact pipeline locations, including underground depth. The WUTC currently provides this shapefile attribute-level data to emergency services "first-responders," but it does not provide this shapefile data to the general public.[3]

C. Washington's Public Record Disclosure Acts

1. 1972 public disclosure act, chapter 42.17 RCW

¶14 In 1972, the people of Washington passed Initiative 276, originally codified as chapter 42.17 RCW and popularly known as the "Public Disclosure Act." LAWS OF 1973, ch. 1. Its stated policy was

> to promote complete disclosure of all information respecting the financing of political campaigns and lobbying, and the financial affairs of elected officials and candidates, and full access to public records so as to assure continuing public confidence of fairness of elections and governmental processes, and so as to assure that the public interest will be fully protected. *In promoting such complete disclosure, however, this chapter shall be enforced so as to insure that the information disclosed will not be misused for arbitrary and capricious purposes* . . . .

RCW 42.17.010 (emphasis added). As is apparent from its plain language, the Public Disclosure Act focused on the efficient administration of government, fair dealing by elected representatives and public officials at all levels of government, and the public's access to pertinent governmental information.

---

[3] To our knowledge, this case involves the first public request for pipeline shapefile data made by non-first-responders.

## 2. 2005 Public Records Act, chapter 42.56 RCW

¶15 In 2005, our state legislature recodified portions of the 1972 Public Disclosure Act as chapter 42.56 RCW, which became known as the Public Records Act. RCW 42.56.020. Requiring liberal construction of the act, RCW 42.56.030 declared:

> The people of this state do not yield their sovereignty to the agencies that serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may maintain control over the instruments that they have created. This chapter shall be liberally construed and its exemptions narrowly construed to promote this public policy.

¶16 Nevertheless, the legislature specifically exempted several categories of records and types of information from disclosure under the Public Records Act. One such exemption is for "[r]ecords filed with the utilities and transportation commission or attorney general under RCW 80.04.095 that a court has determined are confidential under RCW 80.04.095." RCW 42.56.330(1). Another exemption is for information "relating to security," "assembled, prepared, or maintained to prevent, mitigate, or respond to criminal terrorist acts" that

> significantly disrupt the conduct of government or of the general civilian population of the state or the United States and that manifest an extreme indifference to human life, the public disclosure of which would have a substantial likelihood of threatening public safety.

RCW 42.56.420(1).

¶17 In addition, RCW 42.56.270 exempts certain "financial, commercial, and proprietary information" from disclosure. And RCW 80.04.095 prescribes procedures to protect from public disclosure and copying records filed with the WUTC or the attorney general that contain "valuable

commercial information, including trade secrets or confidential marketing, cost, or financial information, or customer-specific usage and network configuration and design information."

### 3. House Bill 1478

¶18 During the 2007 regular session of the 60th legislature of the State of Washington, House Representatives Jeff Morris, Larry Crouse, Dean Takko, John McCoy, Jim McCune, Phyllis Kenney, and Kelli Linville introduced House Bill 1478. House Bill 1478 proposed amending RCW 81.88.080 to allow disclosure of only 1:24,000 scale maps to general requestors of pipeline data under the Public Records Act. House Bill 1478 provided that the more detailed shapefile data filed by pipeline companies with the WUTC would be available only to state agencies, local governments, and first-responders, such as fire fighters and law enforcement personnel.

### D. Public Requests for Disclosure of Pipelines' Shapefile Data

¶19 In response to proposed House Bill 1478, the *Bellingham Herald* and other member newspapers of Allied Daily Newspapers[4] (Newspapers) filed requests with the WUTC for:

> Access to and a copy of all geographic information system data compiled by the [WUTC] regarding hazardous liquid and gas pipelines in Whatcom County as well as underground location information and maps of pipelines from hazardous liquid pipeline companies and gas pipeline companies with interstate pipelines, commercial gas pipelines, or gas transmission pipelines in Whatcom County.

Clerk's Papers (CP) at 109. Jean Buckner, of Buckner Associates of Bellevue and a voting member of the Wash-

---

[4] Other member newspapers of Allied Daily Newspapers include *The Seattle Post-Intelligencer*, *The Seattle Times*, and *The Tri-City Herald*.

ington State Citizens Committee on Pipeline Safety,[5] submitted a similar request,[6] seeking the more detailed shapefile data.

¶20 As required by RCW 42.56.540, the WUTC notified the affected Pipelines of these non-first-responder requests for detailed pipeline shapefile data and of the WUTC's intent to disclose the requested data unless the Pipelines obtained a contrary court order or the Newspapers and Buckner withdrew their requests.

## II. PROCEDURE

¶21 Fourteen pipeline companies or associations filed actions to enjoin the WUTC from disclosing the requested pipeline shapefile data: Northwest Gas Association; Olympic Pipe Line Company; Chevron Pipe Line Company; Northwest Terminaling Company; BP West Coast Products, LLC; McChord Pipeline Company; Intalco Aluminum Corporation; Yellowstone Pipe Line Company; ConocoPhillips Pipe Line Company; Terasen Pipelines (Puget Sound) Corporation; Valero, LP; Portland General Electric; B-R Pipeline Company; and KB Pipeline Company. The trial court consolidated these cases.

¶22 On February 16, 2007, the trial court signed the first of several agreed temporary restraining orders, and it set a preliminary injunction hearing for March 16.

¶23 On March 12, the Newspapers filed a motion to intervene,[7] to which they attached a brief in opposition to the Pipelines' injunction requests.

---

[5] Buckner serves on this committee with Ilyne Lawson, the WUTC pipeline safety management analyst responsible for notifying pipeline companies about WUTC's plans to release the shapefile data.

[6] Buckner seeks "[W]UTC's electronic database that containing [sic] Pipeline/Facility information, to include all the underlying Pipeline/Facility data." CP at 106.

[7] Buckner did not join in the Newspapers' motion to intervene.

## A. Preliminary Injunction Hearing

¶24 At the March 16 preliminary injunction hearing, the trial court granted the Newspapers' motion to intervene. The Pipelines argued that three state statutory exemptions prevented the WUTC from disclosing the requested shapefile data: (1) RCW 42.56.270,[8] the Public Records Act exemption for financial, commercial, and proprietary valuable information; (2) RCW 42.56.420,[9] the Public Records Act exemption for information gathered or maintained to prevent or to respond to criminal terrorist acts; and (3) RCW 80.04.095, the Pipeline Safety Act provision under which a court can determine that certain otherwise-public records are confidential and not subject to disclosure under chapter 42.56 RCW, if such disclosure would result in private loss. The Pipelines also argued that the shapefile data sought by the Newspapers and Buckner was "most likely exempt" under the federal Freedom of Information Act, 5 U.S.C. § 552.

¶25 Ruling these exemptions inapplicable, the trial court denied the Pipelines' request for a preliminary injunction and ordered the WUTC to disclose the requested shapefile data to the Newspapers and to Buckner.

## B. Appeal

¶26 The Pipelines appealed. On March 30, our court commissioner stayed the trial court's order that the WUTC disclose the shapefile data to the Newspapers and Buckner. In light of the public interests involved in the matter, our commissioner accelerated review.

---

[8] Formerly RCW 42.17.310(1)(h) (2003).

[9] Enacted in 2005, effective July 1, 2006. Laws of 2005, ch. 274, § 422.

¶27 The following parties have filed briefs on appeal: appellant Pipelines, respondent WUTC,[10] and intervenor Newspapers. We also accepted two amicus curiae briefs: (1) on behalf of the Pipelines, an amicus brief from the American Petroleum Institute (API)[11] and the Association of Oil Pipe Lines[12] and (2) on behalf of the intervenor Newspapers, an amicus brief from the Washington Coalition for Open Government (WACOG).[13] The WUTC and the Newspapers have filed responses.

## ANALYSIS

¶28 This appeal presents several important conflicts between the public's right to access information about governmental operations and the government's duty to protect the public from potential terrorist acts both locally and nationally. Here, certain highly specialized and detailed shapefile data about gas and other hazardous materials pipelines must be readily available to those who protect public safety. On the other hand, this highly specialized shapefile data must not be readily available to those, like saboteurs, who would use it to jeopardize public safety. Resolution of these conflicts involves issues of first impression.

---

[10] Although the Washington attorney general filed briefs on behalf of the WUTC, he did not advocate that the requested shapefile data falls either within or outside exemptions to the Public Records Act. Nor did the assistant attorney general appearing for the WUTC at oral argument answer our direct questions about this critical issue. Instead, the assistant attorney general adhered to the position that the plain language of the Public Records Act requires the WUTC to disclose requested information unless a court orders otherwise; he did not enlighten to us about the State's interpretation of the Public Records Act or its legislatively prescribed exemptions.

[11] The API is a "non-profit, trade association headquartered in Washington, D.C., that represents over 400 members engaged in all aspects of the petroleum and natural gas industry." API Amicus Br. at 1.

[12] The Association of Oil Pipe Lines is "an unincorporated, non-profit trade association representing 49 oil pipeline companies." API Amicus Br. at 1-2.

[13] The WACOG is "an independent, nonpartisan organization dedicated to promoting and defending the public's right to know in matters of public interest and in the conduct of the public's business." WACOG Amicus Br. at 1.

¶29 First, in denying the Pipelines a preliminary injunction and ordering the WUTC to disclose the requested shapefile data immediately, did the trial court violate CR 65(a) by (1) conflating a permanent injunction trial into the preliminary injunction hearing without giving the required notice to the parties and thereby (2) rendering a final determination only four days after allowing multiple new parties to intervene, without giving the Pipelines an opportunity to prove their claims at a trial on the merits?

¶30 Second, in denying a preliminary injunction, did the trial court apply the wrong standard of proof and err in failing to find a "likelihood of success on the merits" when it decided the Pipelines had not shown that the requested shapefile data falls under any Public Records Act exemptions, in particular, the terrorist exemption?

¶31 Third, does federal law preempt application of Washington's Public Records Act with respect to WUTC's release of pipeline shapefile data, especially, for example, shapefile data for pipelines serving federal military bases?

I. Standard of Review

¶32 The Pipelines assert,[14] the WUTC agrees,[15] and intervenor Newspapers do not dispute that the applicable standard of review is de novo. In support, they cite RCW 42.56.550(3), which provides:

> Judicial review of all agency actions taken or challenged under RCW 42.56.030 through 42.56.520 shall be de novo. Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. Courts may examine any record in camera in any proceeding brought under this section. The court may conduct a hearing based solely on affidavits.

---

[14] Br. of Appellant at 21.

[15] Br. of Resp't at 11.

*See Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 252, 884 P.2d 592 (1994) (PAWS); *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993) (The appellate court reviews de novo the trial court's denial of an injunction sought under the Public Records Act where the record comprises declarations, memoranda of law, and other documentary evidence.). Accordingly, we review the trial court record de novo.

## II. CR 65 VIOLATION

¶33 The Pipelines argue that the trial court erred (1) in treating the preliminary injunction hearing as a trial on the merits of their request for a permanent injunction without notice to the parties, contravening CR 65(a); (2) in finding that no state exemptions to the Public Records Act applied; (3) in denying their request for a preliminary injunction to maintain the status quo and thereby foreclosing their right to present evidence at a trial on the merits; and (4) in failing to consider fully whether federal law, including the federal Freedom of Information Act exemptions, preempts at least some of the Newspapers' and Buckner's requests for disclosure of pipeline shapefile data under Washington's Public Records Act. We agree.

¶34 Civil Rule 65 governs trial court procedure for obtaining an injunction. The process generally progresses from temporary restraining order, to preliminary injunction, to permanent injunction. CR 65(a)(2) provides, however, that "[b]efore or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated" with the preliminary injunction application hearing. But "[i]f [a] court does not expressly state that it is consolidating the injunction hearing and a trial on the merits, it may not render a final determination on the merits." *League of Women Voters of Wash. v. King County Records, Election & Licensing Servs. Div.*, 133 Wn. App. 374, 382, 135 P.3d 985 (2006). The

purpose of this rule, as with its federal counterpart, is to give the parties notice and time to prepare so that they will have a full opportunity to present their cases at the permanent injunction hearing. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) (applying Fed. R. Civ. P. 65(a)(2), which mirrors CR 65(a)(2)).

¶35 Here, the trial court did not expressly inform the parties that it was consolidating the preliminary injunction hearing with a permanent injunction trial on the merits under CR 65(a)(2). Yet, in ordering the WUTC to disclose the Pipelines' shapefile data to the Newspapers and Buckner, the trial court essentially considered and finally resolved the merits of the Pipelines' claims at the preliminary injunction hearing, at which it erroneously applied the permanent-injunction standard of proof, contrary to CR 65.

¶36 As the Pipelines note: (1) they were unable to develop their evidence fully for the preliminary injunction hearing because of the expedited timeframe; (2) the Pipelines provided the trial court with numerous substantive declarations showing some of the evidence they were preparing to present at a permanent injunction trial on the merits; and (3) the trial court's order that the WUTC disclose the shapefile data following this summary procedure defeated the purpose of a preliminary injunction—to preserve the status quo[16] while the plaintiff compiles the evidence necessary to establish the need for a permanent injunction, to be proven at a future trial on the merits.

¶37 Persuaded by the Pipelines' arguments, we hold that the trial court erred when it conflated the permanent injunction trial into the preliminary injunction hearing without notice to the parties, contrary to CR 65, and issued a final order on the merits only four days after allowing new parties to intervene, without giving the original parties a

---

[16] The "status quo" means the " 'last actual, peaceable, noncontested condition which preceded the pending controversy.' " *Gen. Tel. Co. of Nw., Inc. v. Wash. Utils. & Transp. Comm'n*, 104 Wn.2d 460, 466, 706 P.2d 625 (1985) (quoting *State ex rel. Pay Less Drug Stores v. Sutton*, 2 Wn.2d 523, 529, 98 P.2d 680 (1940)).

full opportunity to present evidence and to prove their respective positions at a trial on the merits. We reverse.

¶38 We could end our analysis here and remand to the trial court to reconsider the Pipelines' request for a preliminary injunction in accordance with CR 65. But mindful that this is an accelerated appeal and to conserve the parties' and the courts' resources, we review the record de novo, address the requirements for injunctive relief, hold that the trial court erred in refusing to issue a preliminary injunction,[17] reverse the trial court's order that the WUTC release the requested information immediately, and remand for a trial on the merits of the Pipelines' request for a permanent injunction.

III. Public Records Act—Injunctive Relief

¶39 The law is well settled that to obtain injunctive relief, a plaintiff must establish (1) he has a clear legal or equitable right, (2) he has a well-grounded fear of immediate invasion of that right by the entity against which he seeks the injunction, and (3) the acts about which he complains are either resulting or will result in actual and substantial injury to him. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982). The plaintiff must satisfy these three basic requirements regardless of whether the injunction he seeks is temporary or permanent. *Fed. Way Family Physicians, Inc. v. Tacoma Stands Up for Life*, 106 Wn.2d 261, 265, 721 P.2d 946 (1986).

A. Preliminary Injunction—Likelihood of Prevailing at Trial on the Merits

¶40 A preliminary injunction serves the same general purpose as a temporary restraining order—to pre-

---

[17] In reviewing the request for a preliminary injunction de novo and applying the required legal standards, it is not our intent to imply that we are prejudging the ultimate merits of the case. On the contrary, we expect that the parties will litigate and the trial court will decide the merits at a permanent injunction trial on remand.

serve the status quo until the trial court can conduct a full hearing on the merits of the complaint. *McLean v. Smith*, 4 Wn. App. 394, 482 P.2d 798 (1971); *State ex rel. Pay Less Drug Stores v. Sutton*, 2 Wn.2d 523, 528-29, 98 P.2d 680 (1940). At a preliminary injunction hearing, the plaintiff need not prove and the trial court does not reach or resolve the merits of the issues underlying these above three requirements for injunctive relief. *Tyler Pipe*, 96 Wn.2d at 793. Rather, the trial court considers only the *likelihood* that the plaintiff will ultimately prevail at a trial on the merits by establishing that he has a clear legal or equitable right, that he reasonably fears will be invaded by the requested disclosure, resulting in substantial harm. *Id.*

¶41 We address each of these three injunctive-relief requirements.

## 1. Clear legal or equitable right

¶42 "To establish . . . a clear legal or equitable right, the moving party must show that it is likely to prevail on the merits." *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 154, 157 P.3d 831 (2007). Here, the Pipelines sought to establish a right to exempt their shapefile data from general public disclosure through three alternate legislative exemptions under the Public Records Act. We hold that the Pipelines' offer of proof to support the so-called "terrorist" security exemption under RCW 42.56-.420(1) is sufficient to support issuance of a preliminary injunction and to proceed to a trial on the merits of the Pipelines' request for a permanent injunction, based on any of the exemptions that they can prove at that time. Therefore, we address this security exemption in light of RCW 42.56.540, which takes into account the public interest.

¶43 The Pipelines asked the trial court to enjoin the WUTC from disclosing the shapefile data under RCW 42.56.540, which protects public records from disclosure when "examination would clearly not be in the public interest and would substantially and irreparably damage

any person, or would substantially and irreparably damage vital government functions."

¶44 In support of their position, the Pipelines submitted more than 20 declarations from Northwest Gas Association members and other industry representatives.[18] These declarations assert that (1) the Pipelines' natural gas pipeline system "constitutes part of the critical energy infrastructure" of the state and of the northwest region of the United States and (2) "[t]he incapacity or destruction of the regional gas pipeline system would have potentially catastrophic consequences for economic security and public safety." CP at 44. The Newspapers do not refute these assertions. The Pipelines raise serious issues of proprietary interests, public safety, and national security[19] involved in the public release of highly sensitive, detailed, proprietary pipeline shapefile data. Nonetheless, the trial court addressed and rejected the Pipelines' claim that the shapefile data fell within RCW 42.56.420(1), the exemption relating to security.

¶45 RCW 42.56.420(1) provides:

The following information relating to security is exempt from disclosure under this chapter:

(1) Those portions of records *assembled, prepared, or maintained to prevent, mitigate, or respond to criminal terrorist acts,* which are acts that significantly disrupt the conduct of government or of the general civilian population of the state or the United States and that manifest an extreme indifference to human life, the public disclosure of which would have a substantial likelihood of threatening public safety, consisting of:

(a) Specific and unique vulnerability assessments or specific and unique response or deployment plans, *including compiled*

---

[18] We granted the Pipelines' motion to supplement the record to include the declaration of Jack Fox, the general manager for the Pipeline Office of Transportation Sector Network Management, Transportation Security Administration, United States Department of Homeland Security.

[19] For example, George Hills, chief engineer for McChord Pipeline Company, asserts in his declaration that at least some of the requested shapefile data concerns pipelines serving military bases.

*underlying data* collected in preparation of or *essential to the assessments, or to the response or deployment plans*; and

(b) *Records not subject to public disclosure under federal law* that are shared by federal or international agencies, and information prepared from national security briefings provided to state or local government officials related to domestic preparedness for acts of terrorism.

(Emphasis added.)

¶46 Noting that the public records security exemption statute is new and, thus, presents an issue of first impression, the trial court analyzed two issues: legislative intent and whether the shapefile data was assembled, prepared, or maintained to prevent or to respond to terrorism. The trial court reasoned that (1) the shapefile data is collected under Washington's Pipeline Safety Act, which the legislature enacted before enactment of the RCW 42.56.420(1) security exemption provisions; (2) thus, the information is collected and maintained to assist first-responders in protecting the public safety, regardless of the cause of the pipeline catastrophe, terrorism or otherwise; (3) therefore, the shapefile data would qualify as "information assembled, prepared or maintained to prevent or respond to terrorism" only under a broad construction of Public Records Act exemptions, which broad construction the legislature has not permitted, RCW 42.56.030; and (4) as a result, RCW 42.56.420(1) does not exempt public disclosure of the pipeline shapefile data.

¶47 Although our review is de novo, in setting forth our holding and supporting rationale, we believe it helpful to explain our disagreement with the essence of the trial court's reasoning, which was as follows: To qualify for the RCW 42.56.420(1) security exemption, the requested information must have been initially gathered exclusively or primarily to combat terrorism; and because the requested shapefile data was initially gathered to protect the public from nonterrorist pipeline explosions and other pipeline catastrophes, it cannot now qualify under the terrorism-security exemption, even if it is currently maintained

for that nonexclusive purpose. Although, as the trial court notes, courts should construe Public Records Act exemptions narrowly, we view its rationale here as too narrow and inconsistent with our legislature's intent in enacting the security exemption to the Public Records Act.

¶48 It is well-settled that we interpret statutes to avoid absurd results. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). RCW 42.56.420(1) expressly exempts from disclosure under the Public Records Act "portions of records assembled, prepared, *or maintained* to prevent, mitigate, or respond to criminal terrorist acts." (Emphasis added.) In our view, it would be absurd to read this provision as an expression of the legislature's intent to exempt from public disclosure only information *collected solely to combat terrorism*, when the WUTC currently *maintains* this same information "to prevent, mitigate, or respond to criminal terrorist acts." RCW 42.56.420(1).

¶49 It would be similarly absurd to read RCW 42.56-.420(1) as an expression of the legislature's intent to allow public disclosure of the shapefile data simply because the WUTC *initially collected* some, or even all, of the second-tier attribute-level pipeline data, from which the WUTC assembled the shapefiles, to assist first-responders in combating nonterrorist pipeline threats to public safety, such as earthquakes, floods, and fires. Such a narrow reading of this section would ignore that the WUTC currently maintains this shapefile data "to prevent, mitigate, or respond to criminal terrorist acts," RCW 42.56.420(1), in addition to assisting first-responders in combating natural pipeline-related disasters.

¶50 The declarations that the Pipelines submitted at the preliminary injunction hearing establish the Pipelines' intent and likely ability to prove at a trial on the merits that first-responders need access to this shapefile data during pipeline catastrophes to facilitate locating and shutting down, where necessary, buried pipeline valves and to pinpoint quickly and to stop leaks of hazardous, volatile substances. That this shapefile data is critical to first-

responders' ability to provide for the public safety, regardless of the instrumentality precipitating a pipeline catastrophe, does not, as a matter of law, defeat the Pipelines' ability to prove the statutory security exemption at trial. Even if the Pipelines originally provided the WUTC with second-tier attribute-level pipeline data to protect public safety in general, without expressing specific concern about terrorist attacks, the record shows that the WUTC currently "maintains" the pipeline shapefile data to assist in responding to terrorist attack, as well as to other, nonterrorist-precipitated catastrophes that threaten public safety.

¶51 Thus, the Pipelines have established a likelihood of proving at trial that the requested shapefile data falls under the statutory security exemption, which, we repeat, expressly includes "portions of records assembled, prepared, *or maintained to prevent, mitigate, or respond to criminal terrorist acts.*" RCW 42.56.420(1) (emphasis added). The legislature's use of the conjunctive "or" clearly indicates its intent that "maintaining" records to mitigate or to respond to terrorist acts is sufficient to qualify that information for the security exemption, even if these records were not initially assembled or prepared for such security purposes.

¶52 Similarly, the Pipelines have established a likelihood that they will be able to prove at trial that keeping this shapefile data out of the hands of potential pranksters and terrorists is also critical to providing for the public safety, especially when individual homeowners, developers, and others seeking site-specific pipeline-location information can obtain what they need through the One-Call System. The Pipelines' shapefile data would thus meet the statutory definition of information exempted from disclosure due to the threat of terrorism. *See* RCW 42.56.420(1)(a).

¶53 Therefore, we hold that the Pipelines have met their preliminary injunction burden of showing a likelihood that they can demonstrate at trial a clear legal or equitable right

to an exemption from disclosure under the Public Records Act of at least some of the requested shapefile data.

## 2. Well-grounded fear of immediate invasion of rights

¶54  We next address the second injunctive relief requirement—establishment of the likelihood that the Pipelines will be able to prove at the permanent injunction trial that general disclosure will result in an invasion of their right to keep at least some the requested shapefile data confidential. The Pipelines' offer of proof shows that disclosure of at least some of the requested shapefile data would be an immediate invasion of the Pipelines' right to keep this data confidential with respect to the general public and to disclose it only to first-responders and others who would use it to protect the public. Accordingly, we hold that the Pipelines have met this preliminary injunction requirement.

## 3. Actual or substantial injury

¶55  As for the third injunctive relief requirement, at the preliminary injunction hearing the Pipelines offered declarations asserting they would prove at trial that they would sustain irreparable injury if the trial court did not preserve the status quo by preliminarily enjoining the WUTC's release of the shapefile data while the parties prepared for a trial on the merits of the Pipelines' request for a permanent injunction. The Pipelines demonstrated, for example, that if the WUTC discloses the shapefile data, as the trial court ordered, and the Pipelines then prevail at trial, the Pipelines will not be able to remedy the harm resulting from the disclosure because, once released, the shapefile data cannot be retrieved and returned to a protected or confidential status.

¶56  Under these circumstances, prevailing at a trial on the merits would be meaningless for the Pipelines and for the public, whom the legislature's exemption seeks to

protect. Irreparable damage would already have occurred when the WUTC released the shapefile data following the trial court's denial of the Pipelines' request for a preliminary injunction. We hold, therefore, that the Pipelines have also met this third requirement for preliminary injunctive relief.

## B. Competing Equities

¶57 Finally, we note that because injunctions are addressed to the court's equitable powers, the court must examine the above three preliminary injunction requirements in light of competing equities. *Tyler Pipe*, 96 Wn.2d at 793. This examination includes balancing the relative interests of the parties and, where appropriate, as here, the interests of the public. *Id.* at 792. Here, these equitable factors weigh in favor of granting the preliminary injunction to maintain the status quo until a full trial on the merits of the Pipelines' claimed exemption of the shapefile data from disclosure under the Public Records Act.

¶58 We recognize the important and fundamental nature of the public's right to know about the inner workings of our government, especially in the state of Washington, where we citizens have historically and consistently demanded transparent and open government to allow public oversight. *PAWS*, 125 Wn.2d at 251. Echoing the United States Supreme Court, we also recognize that " '[o]ur citizenry has a legitimate and substantial interest in the conduct of [certain private institutions], and freedom of the press to engage in uninhibited debate about their involvement in public issues and events is as crucial as it is in the case of "public officials." ' " *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 42, 91 S. Ct. 1811, 29 L. Ed. 2d 296 (1971) (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 163-64, 87 S. Ct. 1975, 18 L. Ed. 2d 1094 (1967) (Warren, C.J., concurring in result)).

¶59 In assessing the relative harm to the parties resulting from the WUTC's disclosure or nondisclosure of the

Pipelines' shapefile data, we first note that detailed pipeline location maps are already available to the public. The National Pipeline Mapping System, for example, provides uninhibited public access to detailed pipeline information nationwide. This publicly-available information includes street-level location of pipelines, identification of the commodities transported in the pipelines, and contact information for the relevant pipeline companies. With this national pipeline map, any member of the general public can learn precise locations of all pipelines carrying hazardous materials throughout the United States, including the state of Washington.

¶60 In addition, as we have previously noted, the public can access necessary pipeline details for specific properties and locations as needed through the One-Call System. And the WUTC already provides the shapefile data to first-responders, those to whom we have delegated the responsibility for protecting our public safety in the face of minor, as well as potentially catastrophic, disasters involving pipelines transporting gas and other hazardous materials. That essential portions of the requested pipeline information are already generally available to the public for everyday use[20] weighs heavily in favor of granting the preliminary injunction against disclosure of the more detailed shapefile pipeline data to non-first-responders.

¶61 In light of the high-level pipeline mapping information's current availability, we fail to see how the Newspapers, Buckner, or the public would sustain injury from the issuance of a preliminary injunction against disclosure of the shapefile data until there can be a full trial on the merits of the underlying facts and issues. Neither the general public's safety nor our citizens' need to oversee governmental functions will be harmed if disclosure of the shapefile data is postponed pending the permanent injunction trial.

[20] It is this publicly available mapping information that the trial court may have misconstrued as shapefile data.

¶62 In contrast, the record shows that the Pipelines have demonstrated significant potential dangers to public safety if detailed shapefile data, such as cathodic protection test sites and valves, pipeline diameter, and metering facilities, are disclosed to the Newspapers and Buckner, and from them to the general public. The shapefile data, once released, cannot be retrieved to protect it from pranksters, saboteurs, terrorists, and others who might seek to use these highly detailed pipeline specifications for disastrous purposes.

¶63 Having balanced the equities and having examined the three preliminary injunction requirements while reviewing the record de novo, we hold that the equitable factors weigh in favor of issuing the preliminary injunction and that the Pipelines have met their burden to warrant issuance of a preliminary injunction by establishing: (1) the likelihood of proving a clear legal or equitable right at a trial on the merits, (2) a well-grounded fear of immediate invasion of that right, and (3) that an actual or substantial injury will result if no preliminary injunction issues. *Tyler Pipe*, 96 Wn.2d at 792. We hold, therefore, the trial court erred in denying the Pipelines' request for a preliminary injunction and in ordering the WUTC to disclose the pipeline shapefile data without first allowing the Pipelines an opportunity to prove their case at a trial on the merits of their request for injunctive relief.

## IV. FEDERAL PREEMPTION

¶64 Alternatively, the Pipelines argue that federal law preempts state law in matters of gas and hazardous material pipeline safety and, therefore, federal law controls, regardless of how we might independently interpret Washington's Public Records Act. First, the Pipelines assert that release of the requested shapefile data directly conflicts with federal policy protecting national pipeline mapping

data and restricting disclosure of such data.[21] Second, the Pipelines argue that 49 U.S.C. § 60117(d) preempts disclosure of the pipeline shapefile data under our state's Public Records Act because (1) 49 U.S.C. § 60117(d) prohibits disclosure of information gathered by a federally-authorized agent under the Trade Secrets Act, 18 U.S.C. § 1905, and (2) the WUTC gathers confidential information in its capacity as such an agent of the Federal DOT.[22] And third, the Pipelines contend that the federal Pipeline Safety Act preempts portions of our state Pipeline Safety Act. 49 U.S.C. § 60104(c).

¶65 As we previously noted, the federal Pipeline Safety Act preemption clause precludes states from establishing separate safety standards for interstate pipeline facilities and interstate pipeline transportation. 49 U.S.C. § 60104(c). But the parties have not yet had an opportunity to present evidence about whether the pipeline shapefile data at issue pertains to intrastate or interstate pipelines[23] within the federal meaning of these terms.[24] Thus, we cannot address the federal preemption issue until such time

---

[21] "[T]he Pipeline and Hazardous Materials Safety Administration [PHMSA] restricts access to the [National Pipeline Mapping System] to federal, state, and local government agencies (including emergency responders)." CP at 232 (citing PHMSA Office of Pipeline Safety web site, https://www.npms.phmsa.dot.gov/data/data_pline.htm).

[22] A certified state authority, such as the WUTC, may adopt more stringent standards for intrastate pipeline facilities and owners if these state standards are compatible with federal standards. 49 U.S.C. § 60104(c).

[23] For example, the executive director of the Northwest Gas Association stated in his declaration that the pipeline systems that the WUTC oversees "constitute part of the critical energy infrastructure in the state of Washington and the Pacific Northwest." Thus, we view this declaration together with numerous other of the Pipelines' declarations as offers of proof that the shapefile data is interstate in nature, not merely intrastate. This is, therefore, another issue for the parties to litigate at the trial on the merits on remand. CP at 33.

[24] 49 U.S.C. § 60101 defines "interstate" and "intrastate" in the gas and hazardous materials pipeline context as follows:
  (6) "interstate gas pipeline facility" means a gas pipeline facility—
    (A) used to transport gas; and
    (B) subject to the jurisdiction of the Commission under the Natural Gas Act (15 U.S.C. 717[-717z]);

as the parties have an opportunity to develop a full record at trial.

¶66 In our view, in denying the Pipelines' request for a preliminary injunction, the trial court ruled prematurely on the federal preemption issue.[25] Accordingly, we remand to the trial court to reexamine whether federal law, including the Freedom of Information Act, preempts disclosure of some or all of the requested pipeline shapefile data. By way of guidance, we note that Washington courts hold that federal preemption of state law may occur if (1) Congress passes a statute expressly preempting state law, (2) Congress preempts state law by occupying the entire field of regulation of a particular subject, or (3) state

---

(7) "interstate hazardous liquid pipeline facility" means a hazardous liquid pipeline facility used to transport hazardous liquid in interstate or foreign commerce;

(8) "interstate or foreign commerce"—

    (A) related to gas, means commerce—

        (i) between a place in a State and a place outside that State; or

        (ii) that affects any commerce described in subclause (A)(i) of this clause; and

    (B) related to hazardous liquid, means commerce between—

        (i) a place in a State and a place outside that State; or

        (ii) places in the same State through a place outside the State;

(9) "intrastate gas pipeline facility" means a gas pipeline facility and transportation of gas within a State not subject to the jurisdiction of the Commission under the Natural Gas Act (15 U.S.C. 717[-717z]);

(10) "intrastate hazardous liquid pipeline facility" means a hazardous liquid pipeline facility that is not an interstate hazardous liquid pipeline facility . . . .

[25] Addressing the issue of federal preemption, the trial court followed the reasoning in *PAWS*, 125 Wn.2d 243. In *PAWS*, plaintiffs sought disclosure of documents filed in connection with an unfunded grant proposal. The university argued that the federal Freedom of Information Act, 5 U.S.C. § 552, preempted disclosure of the sought information. *PAWS*, 125 Wn.2d at 265-66. Our Supreme Court reasoned that the federal Freedom of Information Act did not preempt state law in the facts of the case because (1) it does not contain an express preemption provision; (2) it does not "so comprehensively or pervasively occupy the field of public disclosure as to raise a colorable claim of field preemption or conflict preemption"; and (3) it applies only to federal agencies. *Id.* at 266.

Relying on *PAWS*, the trial court held that the federal Freedom of Information Act does not preempt disclosure of the Pipelines' shapefile data beyond the statutory exemptions it had already rejected because it did not expressly preempt the state Public Disclosure Act and did not apply to state agencies. Nonetheless, the trial court also noted, "*PAWS* does not rule out the possibility that a certain federal statute in a particular situation might preempt a state action." CP at 177. Because the facts here differ significantly from those in *PAWS*, *PAWS* is not a case on point except to the extent it acknowledges the "other statutes" exemption.

law conflicts with federal law as a result of the impossibility of simultaneous compliance with state and federal law or when state law acts as an obstacle to the accomplishment of the federal purpose.[26] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 326, 858 P.2d 1054 (1993).

## CONCLUSION

¶67 We hold, therefore, that the trial court erred when (1) it consolidated the permanent injunction trial with the preliminary injunction hearing and issued a final ruling without notice to the parties as required under CR 65; (2) it excluded from its consideration the Pipelines' declarations, which offered the proof they planned to present at trial on the merits to show that the shapefile data qualified for an exemption from disclosure under the Public Records Act and thereby demonstrated a likelihood of establishing the requirements for issuance of a permanent injunction; (3) it foreclosed the parties from presenting evidence at a trial on the merits pertaining to Public Records Act exemptions and federal preemption; (4) it denied the Pipelines' request for a preliminary injunction without balancing the equities and interests of the parties and the public; and (5) it ordered the WUTC to disclose the requested shapefile data, foreclosing the Pipelines' opportunity to prove their case at trial.

¶68 Accordingly, we reverse the trial court's order that the WUTC disclose the requested shapefile data, and the trial court's denial of a preliminary injunction. We remand to the trial court to issue a preliminary injunction enjoining the WUTC's release of the shapefile data and to conduct a

---

[26] In addition, we note that both the state and the federal Pipeline Safety Acts address the need for security. The federal preemption clause, 49 U.S.C. § 60104(c), focuses on safety standards. 49 U.S.C. § 60103(d) prescribes minimum operating and maintenance standards for liquefied natural gas pipeline facilities, and it includes "security measures to prevent *an intentional act* that could cause a liquefied natural gas accident." 49 U.S.C. § 60103(d)(3) (emphasis added). Again, however, we leave the trial court to decide this issue based on the evidence and arguments the parties present at the trial on the merits of the Pipelines' action for a permanent injunction.

trial on the merits of the Pipelines' request for a permanent injunction.

BRIDGEWATER and QUINN-BRINTNALL, JJ., concur.

Review denied at 163 Wn.2d 1049 (2008).