[No. 8285–3–II.   Division Two.   April 22, 1987.]

INTERNATIONAL FEDERATION OF PROFESSIONAL AND TECH-
NICAL ENGINEERS, AFL–CIO, LOCAL 17, *Appel-
lant*, v. THE STATE PERSONNEL
BOARD, ET AL, *Respondents.*

*Richard D. Eadie,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Senior Assistant,* for respondents.

PETRICH, J.—The International Federation of Professional and Technical Engineers, Local 17, AFL–CIO (the Union) appeals a superior court order that affirmed a decision of the Washington State Personnel Board and denied a request for a declaratory judgment. The Board's decision had affirmed the Department of Personnel's decision not to issue an unfair labor practice complaint against the State Department of Transportation (Transportation) based on a charge that Transportation had refused to engage in collective bargaining with the Union. The request for declaratory judgment sought to invalidate the Board's rule defining the term "collective bargaining." With respect to the claimed invalidity of the Board's rule defining collective bargaining, the issue is whether the regulation, which varies in some particulars from the statutory definition of the term, is so contrary to the statutory term as to be invalid. With

respect to the Board's decision, the primary issue is the appropriate standard of review of that decision and whether the decision should be affirmed or reversed under that standard of review.

We conclude that the Board's rule defining collective bargaining between the employing agency and the bargaining representative employee is substantially the same as the statutory definition and therefore is valid. We also conclude that the Board's decision affirming the Personnel Department's refusal to issue an unfair labor practice complaint is subject to review for arbitrary and capricious action under the court's inherent power of review, Const. art. 4, § 1, and that the Board's decision was not arbitrary and capricious. Accordingly, we affirm the Board's decision and the court's dismissal of the Union's request for declaratory judgment.

The Union is the certified exclusive bargaining representative of Transportation's employees who are in the Transportation Engineer 1 job classification (TE–1). Nevertheless, during the proceedings described herein and until the unfair labor practice charge was filed, no union contract was under negotiation and none had been proposed.

In February 1978, Transportation began to formulate a training program. On October 2, 1978, Transportation requested that the Department of Personnel designate all TE–1 positions as "in training." Transportation notified the Union of this request.

Almost 1 year later, on January 9, 1979, Transportation gave the Union a copy of a memo from the Department of Personnel that indicated that Transportation was establishing a training program. More than 2 weeks later, the Union notified both Transportation and the Department of Personnel that it considered the training program a bargainable issue. Then on March 1, 1979, Transportation and the Union met with Personnel Department staff to consider the in–training designation request. The Personnel Department subsequently approved the request on March 6, 1979. The Union protested the approval by letter dated March 9,

1979.

On April 19, 1979, Transportation sent the Union a copy of Transportation's proposed directive on the training program. The Union reviewed the directive with Transportation on May 1, 1979. At that time, June 1 was discussed as a completion date for solicitation of member input with regard to the directive, and July 1 was discussed as an intended implementation date.

On June 6, 1979, the Union sent a letter to Transportation that listed several proposals concerning the training program and suggested a meeting on June 18, 1979, for the purpose of resolving the differences by negotiation. Then, on June 14, 1979, Transportation sent a letter to the Union indicating that the program would be implemented on July 1, 1979.

In response, the Union filed an unfair labor practice charge with the Department of Personnel on June 29, 1979. The charge alleged that Transportation had committed an unfair labor practice by refusing to engage in collective bargaining.

Former WAC 356-42-080(3), then applicable, provided:

> Upon receipt of an unfair labor practice charge, the Board or its designee shall conduct an investigation to determine whether or not the charges are frivolous or substantially without merit. If it is found that the charges are not frivolous or are not without substantial merit, a complaint shall be issued and a hearing scheduled, as provided by these Rules.

The Department of Personnel, as the Board's designee, after investigation of the charge, determined that the charge lacked merit and decided not to issue a complaint.

The Union then appealed to the Board, which granted Transportation's motion to dismiss the appeal on the basis of mootness. The Union then sought review from the superior court. The superior court reversed the Board's dismissal and remanded the matter for hearing.

Subsequent to the hearing, the Board on June 30, 1982, again issued an order dismissing the Union's unfair labor

practice charge. This order stated that an unfair labor practice had not occurred and affirmed the Department of Personnel's decision not to issue an unfair labor practice complaint. The Union then sought review of the Board's decision by the superior court, coupled with a claim for declaratory relief to invalidate the Board's rule defining collective bargaining. The superior court affirmed the Board's decision and denied the request to declare invalid the Board's regulation defining collective bargaining. The Union now appeals to this court.

### BOARD'S RULE DEFINING COLLECTIVE BARGAINING

The Union contends the Board exceeded its authority in adopting former WAC 356–06–010[1] defining collective bargaining for state employees and their employing agency. The Union does not question the Board's authority to adopt a rule defining the term. However, it contends that the definition adopted by the Board conflicts with the legislative definition of the term found in RCW 41.56.030(4)[2] and that the Board thereby exceeded its authority. We disagree.

Administrative rules are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the legislative directive. *Fahn v. Cowlitz*

---

[1]Former WAC 356–06–010 defined collective bargaining or collective negotiation as:

"The performance of the mutual obligation of the appointing authority, or designee, and the certified exclusive representative of a bargaining unit to meet in an attempt to reach an agreement on all personnel matters over which the appointing authority may lawfully exercise discretion."

[2]RCW 41.56.030(4) states in part:

"'Collective bargaining' means the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters, including wages, hours and working conditions . . . except that by such obligation neither party shall be compelled to agree to a proposal or be required to make a concession unless otherwise provided in this chapter."

This statutory definition has been held applicable to state employees and their appointing authority. *Ortblad v. State,* 88 Wn.2d 380, 561 P.2d 201 (1977).

*Cy.,* 93 Wn.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980). A party attacking the validity of an administrative rule has the burden of presenting compelling reasons that the rule is in conflict with the legislative purpose. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 314–17, 545 P.2d 5 (1976). Finally, a rule should be interpreted so that it is not void. *Hayes v. Yount,* 87 Wn.2d 280, 290, 552 P.2d 1038 (1976).

The Union argues that the difference in terminology creates an irreconcilable conflict between the two definitions. It points out: that while the statutory definition requires the parties to meet at reasonable times and to confer and negotiate in good faith, the rule's definition merely requires the parties to meet in an attempt to reach an agreement; that while the statute identifies the issues to be bargained as grievance procedures and personnel matters including wages, hours, and working conditions, the rule simply identifies the issues as all personnel matters over which the appointing authority may exercise discretion; and while the statute mandates a written agreement on the issues, the rule merely requires the parties to attempt to reach an agreement on such issues.

We conclude that, notwithstanding a difference in terminology, the two definitions are substantially the same. Implicit in the obligation to meet as defined in the rule is the obligation to meet at reasonable times as required by the statute. The obligation to attempt to reach an agreement as required by the rule requires that the parties confer and negotiate; otherwise there could be no attempt to reach an agreement. The absence of the term "good faith" in the rule does not create a substantial variance between the two definitions. Just as there is an implied covenant of good faith and fair dealing in every contract, *Miller v. Othello Packers, Inc.,* 67 Wn.2d 842, 410 P.2d 33 (1966), we are satisfied that implicit in the requirement to attempt to reach an agreement is the obligation to do so in good faith. The rule's identification of the bargainable issues as all personnel matters over which the appointing authority may

exercise discretion is broad enough to embrace the bargainable issues specified in the statute. Finally, while the statute mandates the execution of a written agreement, that directive is tempered by the admonition that neither party shall be compelled to agree or be compelled to make a concession. The rule accomplishes the same objective by simply requiring the parties to attempt to reach an agreement. Once an agreement is reached, however, the required formality of the statute that it be in writing must be complied with.

In the face of the presumed validity of the rule, we are satisfied that the Union has not demonstrated compelling reasons why the rule conflicts with the legislative purpose. While the words of the rule are not identical with those of the statute, the definitions are substantially the same and the Union's challenge to the validity of the rule must fail.

UNFAIR LABOR PRACTICE CHARGE

A. Standard of Review

The Union makes several assertions with regard to the appropriate standard of review of the Board's refusal to issue a complaint.

First, it argues that the Board's order affirming the Personnel Department's decision not to issue a complaint is appealable pursuant to several statutes. *See* RCW 41.64-.130, or former RCW 41.06.200, repealed by Laws of 1981, ch. 311, § 21, allowing an appeal from a Board decision under RCW 41.06.170. However, these statutes are inapplicable to the case at bar because, by their own terms, they apply only to appeals by an *employee, not* a labor union.

Second, the Union contends that the Board's order is reviewable under the state administrative procedure act because the order was issued pursuant to a "contested" case proceeding.

[A] "[c]ontested case" means a proceeding before an agency in which an opportunity for a hearing before such agency is required by law or constitutional right prior to or subsequent to the determination by the agency of the legal rights, duties, or privileges of specific parties.

RCW 34.04.010(3), in part.

However, an opportunity for hearing was not required here unless a complaint was issued. *See* former WAC 356–42–080 (in effect when the Board affirmed the Personnel Department's decision). Here, no complaint was issued, so the order was not issued pursuant to a contested case proceeding. Therefore, review of the Personnel Department's refusal to issue the complaint is not attainable under the administrative procedure act. *Prestige Stations, Inc. v. Liquor Control Bd.*, 33 Wn. App. 669, 671, 657 P.2d 322 (1982).

Finally, the Union asserts that the Board's decision is reviewable under either the statutory or constitutional writs of certiorari, RCW 7.16.040, or the inherent power of the court under Const. art. 4, § 1.

■ The statutory writ is available only when the Board exercises a "judicial function." *State ex rel. Hood v. Personnel Bd.*, 82 Wn.2d 396, 399, 511 P.2d 52 (1973). Here, the Board's review of the decision not to issue a complaint is not "judicial" because it is not a function "which the judiciary has historically performed and which the courts could have performed prior to creation of the agency." *Hood*, 82 Wn.2d at 400. *See also Yaw v. Walla Walla Sch. Dist. 140*, 106 Wn.2d 408, 414, 722 P.2d 803 (1986). Thus, the Board's decision is not reversible by the statutory writ.

However, the court does have inherent power to review agency action which is arbitrary and capricious. *Williams v. Seattle Sch. Dist. 1*, 97 Wn.2d 215, 221–22, 643 P.2d 426 (1982).

■ "Under this standard, the courts always have inherent power to review agency action to the extent of assuring that it is not arbitrary and capricious. . . . The courts' inherent power of review extends to administrative action which is contrary to law as well as that which is arbitrary and capricious." *Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees*, 98 Wn.2d 690, 694, 658 P.2d 648 (1983).

Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached.

(Citations omitted.) *Pierce Cy. Sheriff v. Civil Serv. Comm'n for Sheriff's Employees,* 98 Wn.2d at 695, quoting *State v. Rowe,* 93 Wn.2d 277, 284, 609 P.2d 1348 (1980).

Here, the Union claims that the Board failed to comply with applicable rules and was thus arbitrary and capricious. The courts have the inherent power to review the Board's action and review is limited to determining whether the Board's action was arbitrary and capricious or contrary to law.

## B. Board's Rule

The Union contends that the Board's procedure is illegal and contrary to its own rules. That procedure is to issue a complaint only after investigating the factual basis of the charge and determining that the charges are not frivolous, rather than limiting the investigation to whether the alleged facts, if proved, would support an unfair labor practice.

The Union points out that the Public Employment Relations Commission (PERC), which now has the responsibility of administering the Public Employees Collective Bargaining Act, chapter 41.56, for county employees and employees of various political subdivisions of the state, by its rule[3] adopted in 1977, limits the investigation to a

---

[3]"WAC 391–45–110 Initial Processing by executive director. The executive director shall determine whether the facts as alleged may constitute an unfair labor practice within the meaning of the applicable statute. If it is determined that the facts as alleged do not, as a matter of law, constitute a violation, the executive director shall issue and cause to be served on all parties an order of dismissal containing the reasons therefor; otherwise, the executive director shall cause the contents of the charge to be issued and served as a complaint of unfair labor practices, shall assign the matter to an examiner and shall notify the parties of such assignment. An order of dismissal issued pursuant to this section shall be subject to a petition for review as provided in WAC 391–45–350."

review of the allegations of the charge. A complaint is issued unless the facts as alleged do not constitute a violation as a matter of law. The Union argues that while the Board's rule is not as specific as PERC's, the standards are essentially the same. Later amendments by the Legislature to RCW 41.56.170 by Laws of 1983, ch. 58, § 2, according to the Union, ratified PERC's procedure and the Union argues that the Board's rule should be interpreted similarly. We disagree.

■ The Board's rule governing the processing of an unfair labor charge is not essentially the same as PERC's. A determination of whether a charge is frivolous or without merit requires more than a bare reading of the allegations. An investigation of the underlying facts is necessary to determine whether the allegations could possibly be supported by what happened. If no such possibility exists, then the charges should be deemed frivolous or without substantial merit. The Board has consistently interpreted its rule to require an investigation of the underlying facts and a determination that the charges were not frivolous or not without substantial merit before a complaint is issued. An agency's interpretation of its own rules, while not controlling, is entitled to some deference by the court. *Green River Comm'ty College v. Higher Educ. Personnel Bd.*, 95 Wn.2d 108, 117–18, 622 P.2d 826 (1980), *adhered to and modified*, 95 Wn.2d 962, 633 P.2d 1324 (1981).

In 1969 the unfair labor practice provisions, RCW 41.56, were adopted, and then incorporated into the civil service act, RCW 41.06, and the higher education personnel board act, RCW 28B.16. The Department of Labor and Industries preceded PERC in administering the act for public employees of counties and certain political subdivisions. The Higher Education Personnel Board administered the act for the employees of higher education institutions, and the Board administered the act for state employees. The statute then in effect, while giving the respective agencies the power to issue unfair labor practice complaints, did not delineate the manner of processing them. Former RCW

41.56.170, Laws of 1975, 1st Ex. Sess., ch. 296, § 25. Consistent with the National Labor Relations Act, each agency adopted the rule of first determining the merit of the charges before issuing a complaint. The Board's rule governing the processing of unfair labor practice charges is consistent with the then existing statutory authority. The later amendments in 1983 to RCW 41.56.170 by Laws of 1983, ch. 58, § 2, do not prevent our upholding the Board's rule. The enactment occurred years after the Union filed its charges. But there is a more compelling reason why the legislative enactment does not change the result.

■ The unfair labor practice provisions were incorporated into the civil service act by reference to the then existing provisions of the act. Provisions incorporated by reference are provisions that existed at the time of reference, not later amendments. *Seattle v. Green,* 51 Wn.2d 871, 322 P.2d 842 (1958).

We find unpersuasive the Union's argument that the Board's rule allowing the Board to refuse the issuance of a complaint after investigation of the underlying facts when the then bare allegations would facially support the charge is somehow contrary to the act. The Board is empowered and directed to prevent unfair labor practices, RCW 41.56-.160. While the Board has the *power* to issue a complaint, it is not required to do so, former RCW 41.56.170. In the exercise of its power the Board is authorized to conduct investigations. The Board's rule prescribing procedures for processing unfair labor practice charges is in accord with the statutory scheme.

## C. Board's Decision

Finally, the Union contends that the Board's decision not to issue a complaint was in error.[4] It argues that the facts

---

[4]Union attempts to raise other claims of procedural error which need not be addressed because they were either not supported by argument or authority, *Chambers–Castanes v. King Cy.,* 100 Wn.2d 275, 669 P.2d 451, 39 A.L.R.4th 671 (1983); RAP 10.3(a), or else they were not raised before the Board. *Griffin v. Department of Social & Health Servs.,* 91 Wn.2d 616, 631, 590 P.2d 816 (1979).

clearly establish that Transportation refused to negotiate on the TE–1 training program and initiated the program without reaching agreement with the Union, citing *NLRB v. Katz*, 369 U.S. 736, 8 L. Ed. 2d 230, 82 S. Ct. 1107 (1962); therefore, the Union claims that Transportation's unilateral action amounted to an unfair labor practice.

■ The Public Employees' Collective Bargaining Act, RCW 41.56, is substantially similar to the National Labor Relations Act, 29 U.S.C. §§ 151–169, and decisions under the National Labor Relations Act are persuasive in construing our act when its provisions are similar to or based upon provisions of the federal act. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 730 P.2d 653 (1986). However, the Union's reliance on *Katz* is misplaced. At page 743 the *Katz* Court stated:

We hold that an employer's unilateral change in conditions of employment *under negotiation* is similarly a violation of § 8 (a)(5), for it is a circumvention of the duty to negotiate which frustrates the objectives of § 8 (a)(5) much as does a flat refusal.

There were no negotiations for a labor contract taking place when the program was implemented by Transportation. Transportation repeatedly expressed a willingness to negotiate the training program as part of the Union's comprehensive proposal. It simply was not willing to negotiate the terms of the proposed training program as an isolated issue.

Consultation with the Union, not agreement, is all that is required when the employer initiates a change in working conditions, so long as that change is not then subject to negotiation as part of a comprehensive bargaining agreement. The court in *NLRB v. W.R. Grace & Co.*, 571 F.2d 279, 282 (5th Cir. 1978) delineated the scope of the employer's authority when it said:

It is well–settled that an employer violates its duty to bargain collectively when it institutes changes in employment conditions without first *consulting* the union.

*NLRB v. Katz,* 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed. 2d 230 (1962); *NLRB v. Laney & Duke Storage Warehouse Co.,* [369 F.2d 859 (5th Cir. 1966)]. As the court said in *NLRB v. J. P. Stevens & Co., Inc.,* 538 F.2d 1152, 1162 (5 Cir. 1976):

> The employer's power to alter working conditions in his plant is *not contingent upon union agreement* with his proposed change. The company *has only to notify the union* before effecting the change so as to give the union a meaningful chance *to offer counter–proposals and counter–arguments.*

(Italics ours.)

Here, the record reflects that the proposed change was communicated to the Union and the Union did respond with its views. Transportation expressed a willingness to negotiate training as a part of the Union's comprehensive proposal but not as an isolated issue.

We are satisfied that the Board's decision not to issue a complaint on these facts was not arbitrary and capricious.

Affirmed.

REED, C.J., and WORSWICK, J., concur.

Review denied by Supreme Court September 1, 1987.